## MILHOUS *v.* JOHNSON *et al.*

(*Supreme Court, General Term, First Department.* January 28, 1889.)

1. CONTRACT—LEX LOCI CONTRACTUS—INSURANCE.
    A life insurance policy containing references to the statutes of the state in which it was executed, and in which the company keeps its principal office, and providing that the premiums and loss shall be paid there, and transmitted by mail to the company's agent in another state, where the application was made, and where the insured and the beneficiary reside, is governed by the law of the former state.

2. INSURANCE—ASSIGNMENT OF POLICY—MARRIED WOMEN.
    Under Laws N. Y. 1879, c. 248, providing that insurance policies issued within the state upon the lives of husbands for the benefit of their wives, in pursuance of the laws of the state, shall be assignable by the wife with the written consent of the husband, an assignment made during the life-time of the husband without such consent, as a security for a debt owed by him, is void.

3. SAME—CONSENT OF HUSBAND—WHAT AMOUNTS TO.
    The fact that the husband signed a note with his wife to secure which the policy was assigned would not be equivalent to such written consent.

4. HUSBAND AND WIFE—WIFE'S SEPARATE ESTATE—INSURANCE ON HUSBAND.
    Though the note expressly bound the wife's separate estate, the policy would not be covered thereby, as she has no such interest therein, until the death of her husband, as could be the subject of a charge.

On exceptions from circuit court, New York county.

Action by Hannah Milhous against the Mutual Life Insurance Company of New York, on a policy on the life of plaintiff's late husband for her benefit. Pending the action Elizabeth Johnson and F. A. Seborn severally intervened claiming the fund. The insurance company was permitted to pay the money into court and be discharged. There was a verdict for plaintiff, and defendants Johnson and Seborn excepted. Their exceptions were ordered to be heard at the general term in the first instance. Laws N. Y. 1879, c. 248, § 1, is as follows: "All policies of insurance heretofore or hereafter issued within the state of New York upon the lives of husbands for the benefit and use of their wives, in pursuance of the laws of the state, shall be, from and after the passage of this act, assignable by said wife with the written consent of her husband, or, in case of her death, by her legal representatives, with the written consent of her husband, to any person whomsoever, or be surrendered to the company issuing such policy, with the written consent of the husband."

Argued before VAN BRUNT, P. J., and DANIELS and BARTLETT, JJ.

*Ewing & Southard,* for plaintiff. *E. B. Convers,* for defendant Johnson. *Lemuel Skidmore,* for defendant Seborn.

VAN BRUNT, P. J. In 1870 application was made to one J. G. Jennings, agent of the defendant, the Mutual Life Insurance Company of New York, at Cleveland, in the state of Ohio, for a policy of insurance upon the life of one Jonathan P. Milhous, residing at Zanesville, Ohio, for the benefit of his wife, Hannah Milhous, residing at Zanesville, and his children. Jennings took the application, and forwarded it to the company at New York, where the application was accepted, and the policy executed at the company's office in New York, and transmitted by mail to Jennings in Ohio for delivery, and there delivered to the assured. The loss and premiums were made payable by the terms of the policy at the company's office in New York. The policy contained this provision respecting the payment of the loss: "And the said company do hereby promise and agree to pay the amount of said insurance at their office in the city of New York to the assured, for her sole benefit, if living, in conformity with the statute, and, if not living, to her children or their guardian," etc. The premiums on the policy were paid to Mr. Jennings. The Mutual Life Insurance Company, before this policy had issued, had qualified under the laws of Ohio, and had a statutory agent appointed there. At the beginning of the year 1882 one F. A. Seborn held a promissory note for $1,500, made by Milhous and three other persons, which was due. Milhous was pressed by the defendant Seborn to pay this note, and finally it was arranged that Mr. and Mrs. Milhous should give their notes, and also assign the policy to secure the payment of these notes. Mr. Milhous personally delivered to Mr. Seborn, at Zanesville, four notes dated June 28, 1882, for $345.15 each, with interest payable in one, two, three, and four years after date. The notes were all signed by Mr. and Mrs. Milhous, and in each it was expressly stated that Mrs. Milhous charged her separate estate with the payment thereof. At the same time and place there was delivered to Seborn the original policy, with an assignment indorsed thereon, signed by Hannah Milhous. At the time of this transaction, Mr. Seborn and Mr. and Mrs. Milhous were all residents of Ohio. No part of the four notes had been paid. Mr. Seborn has ever since retained the policy in his possession, until he sent it here to his attorney, to be used as evidence in this case. In December, 1881, J. B. Milhous, the plaintiff, and one John Dondna, gave three promissory notes, payable to the order of one Haver, for $300 each, payable in one, two, and three years. These notes were indorsed over to the defendant Elizabeth Johnson, by the payee thereof. In January, 1886, Jonathan P. Milhous died, leaving him surviving the plaintiff, his wife, and several children. The plaintiff made due proof of loss, and in November, 1886, commenced this action against the life insurance company, to recover the amount of such loss. On the 10th of Janu-

ary, 1887, the defendant Elizabeth Johnson commenced an action upon the promissory notes above mentioned, and procured an attachment against the plaintiff, Hannah Milhous, which was served upon the insurance company. A claim was also presented by the defendant Seborn for the amount of said insurance moneys, and upon an application to the court the defendants Johnson and Seborn were brought in as defendants, and the insurance company discharged upon the payment of the money into court.

Upon the trial of this case these facts appeared, and also proof of the laws of Ohio, that where a policy of insurance is made payable to a married woman solely for her use, she may sell, assign, or surrender the same upon the party whose life is insured concurring in and becoming a party to the transfer; and also upon the part of the defendant Johnson, to the effect that a married woman having a separate estate may charge it by the execution of a promissory note as security for her husband or another, and that it is not necessary that by the terms of the note its payment should be made an express charge. Upon this state of facts the court directed a verdict in favor of the plaintiff. This direction seems to have been entirely correct. It is apparent from the foregoing statement that the contract of insurance is to be governed by the laws of the state of New York, and not by the laws of Ohio. In the first place the policy was executed here, and delivered here. It is true, it was transmitted by mail to the agent in Ohio; but after it had been mailed, it was impossible for the company to have recalled it, because it appears from the proof that it was mailed for the purpose of delivery. The contract was to be performed here, as by its very terms the loss is made payable at the company's office in the city of New York. And it further appears upon the face of the policy that it was contracted for and issued with a view to the provisions of the statutes of New York. The contract must therefore be construed according to the laws of this state, and according to the laws with a view to the provisions of which it was issued. If any authority was needed to establish an elementary proposition of this kind, the case of *Barry* v. *Insurance Co.*, 59 N. Y. 587, is a case exactly in point. In that case the policy was of the same form, and it was there held that the rights of the parties were to be determined by the provisions of the laws of New York, as applicable to policies of this description. In view of this consideration, it is entirely immaterial whether the contract is deemed to be entered into in Ohio or not. It was entered into in view of certain provisions of the laws of the state of New York, and in conformity therewith, and the provisions of those acts thereby became incorporated in and an active part of this policy.

It is urged upon the part of the defendant Seborn that he knew nothing about the laws of New York, being a resident of Ohio. That may be true; but upon the face of the policy which he took as security it appeared that the policy had been issued in conformity to the statutes of New York, and he was thereby notified that the state of New York had statutes in reference to this matter; and whether they affected his rights as assignee of the policy or not it was his duty to have ascertained. It is therefore clear that, as far as the defendant Seborn is concerned, by reason of the assignment of this policy to him no rights in and to said policy were acquired, because such assignment was not executed according to the laws of New York, in that it did not appear to have been made by Hannah Milhous with the written consent of her husband.

The claim of the defendant Johnson stands upon a different basis. It is urged that, under the laws of Ohio, by the making of the notes above referred to, the plaintiff charged her separate estate with the payment thereof, although such payment was not made an express charge upon the face of the notes. This seems to be the law of Ohio. But at the time of the making of these notes it does not appear that Hannah Milhous had any separate estate upon which these notes could be a charge; and it is only in case a married woman

has a separate estate that she is empowered by the laws of Ohio to make notes as surety for her husband or another. Therefore Hannah Milhous, being a married woman, unless she is known to have a separate estate, had no power to make the notes which formed the basis of the claim of the defendant Johnson in this case. It is urged that her interest in the policy of insurance constituted a separate estate. We think that the principles laid down in the cases by the courts of this state show conclusively that this policy could have constituted no separate estate of Hannah Milhous, because at no time prior to the death of her husband did she have any interest in this policy which a creditor could seize. This is expressly held in the case of *Smillie* v. *Quinn*, 90 N. Y. 498. If she had no interest in this policy within the reach of a creditor, then she had no separate estate which was the subject of a charge. And, furthermore, it has already been stated that in the state of New York, whose laws are to govern the rights of the plaintiff in this policy, a married woman cannot assign a policy such as the one under consideration without the written consent of her husband. If she cannot assign the policy without such written consent, certainly she cannot mortgage it, and the claim that the plaintiff by the execution of the notes in question made a charge upon this policy is necessarily defeated by the fact that her husband has not executed any consent to the making of such charge. It is true that he joined with his wife in making the notes, but that is no compliance with the requirement of the statute for two reasons: *First*, that the policy did not constitute any separate estate of Mrs. Milhous, and the notes were therefore void; and, *second*, Mrs. Milhous could not assign the policy absolutely without the written consent of her husband, and she certainly could not mortgage it without a like consent. The defendants have therefore established no claim; the notes upon which this claim is founded not being authorized by the laws of Ohio, and formed no claim which could be made the basis of an action in this state to reach the proceeds of this policy. Judgment should therefore be entered upon the verdict in favor of the plaintiff, with costs. All concur.