Justin MATTERS and Mark Matters, Petitioners and Appellants,

v.

CUSTER COUNTY, a Political Subdivision of South Dakota, and Custer County Commissioners: Jack Lintz, Dan Dooley, and Oakley Hoy, in Their Official Capacity, Appellees.

No. 19024.

Supreme Court of South Dakota.

Considered on Briefs May 23, 1995.

Reassigned Aug. 17, 1995.

Decided Oct. 11, 1995.

**534**

Mark F. Marshall of Bangs, McCullen, Butler, Foye and Simmons, Rapid City, for petitioners and appellants.

Gregory J. Barnier, Custer County Deputy State's Attorney, Custer, for appellees.

GILBERTSON, Justice (on reassignment).

Justin and Mark Matters appeal the circuit court's denial of an alternative writ of mandamus to compel Custer County to maintain and repair a road. We reverse and remand with direction to enter the writ.

### ISSUE PRESENTED

IS THE ROAD USED BY MATTERS A PUBLIC HIGHWAY WHICH MUST BE MAINTAINED BY CUSTER COUNTY?

### FACTS AND PROCEDURE

Justin and Mark Matters (Matters) use a road located in Custer County as the access to their home. They sought to have Custer County (County) maintain bridges and culverts along this road. County refused on the grounds that it was not a public highway and that County had no duty to maintain a private road.

Matters sought an alternative writ of mandamus from the trial court requiring the road be maintained by County as Matters argued it is a public highway. The trial court denied the writ on the grounds advanced by County that this road had never been a public highway. Matters appeal.

### STANDARD OF REVIEW

 Our general scope of review of the trial court's factual findings is under the clearly erroneous standard. *Bryant v. Butte County*, 457 N.W.2d 467, 469 (S.D.1990). We review conclusions of law under the de novo standard "[a]nd, since the decision as to who should actually pay for and repair the bridges involves interpretation of statutes, we may review that portion of the trial court's decision de novo." *Id.* However, as the evidence consists entirely of affidavits, maps and printed material, "(u)nder our long-standing rule, when reviewing findings based on documentary evidence we do not apply the clearly erroneous rule set forth in SDCL 15–6–52(a), but review the matter de novo." *First Nat. Bank v. Bank of Lemmon*, 535 N.W.2d 866, 871 (S.D.1995) (Miller, Chief

Justice, writing the majority opinion w/respect to the issue of the correct standard of review).

## ANALYSIS AND DECISION

■ Matters claim they are entitled to the writ of mandamus as this road is a public highway, the maintenance of which is a "mandatory" ministerial duty and not a discretionary one. *Bryant,* 457 N.W.2d at 470–71 (citing *Schaller v. Ericson,* 49 S.D. 499, 207 N.W. 459 (1926)). Matters argue this is a county highway which, by law, County must maintain. If Matters prevail, they are entitled to the writ "to compel the admission of a party to the use and enjoyment of a right or office to which [they are] entitled, and from which [they are] unlawfully precluded by such ... board." SDCL 21–29–1. As noted above, Matters seek to use the road to provide access to their home.

In *Bryant,* we held the duty of a county to maintain public highway bridges and roads is ministerial and thus, the proper subject of mandamus. *Bryant,* 457 N.W.2d at 471. The question then becomes, whether this "road" which is the subject of this proceeding, is a public highway thereby becoming a responsibility of the County.

SDCL 31–1–1 defines a public highway as "[e]very way or place of whatever nature open to the public, as a matter of right, for purposes of vehicular travel." Under SDCL 31–1–2, "[b]ridges and culverts erected or maintained by the public constitute a part of the public highway." SDCL 31–1–5 defines the various types of roads for purposes of establishing the obligation of maintenance by the appropriate governing body. That statute defines the "county secondary highways" as "the rural local highways in organized counties, excluding the approved county highway system [1] that are under the supervision of a board of county commissioners." Based on this definition, SDCL 31–12–26 provides:

It shall be the duty of the board of county commissioners and county superintendent of highways in organized counties, to construct, repair, and maintain all secondary roads within the counties not included in any city, incorporated town, or organized civil township.[2]

The subject of maintenance of bridges and culverts is specifically addressed by SDCL 31–14–2:

The duty to construct and maintain all bridges and culverts throughout the county, except those upon the state trunk highway system, is hereby imposed upon the board of county commissioners, subject to conditions relating to bridges and culverts on secondary highways in townships.

The trial court held in its findings of fact and conclusions of law: (1) this road had not become a rural secondary highway under the theory of prescriptive easement pursuant to SDCL 31–3–1, (2) nor had it become a rural secondary highway pursuant to SDCL 31–3–6 through –9, (3) nor was it a section line highway under SDCL 31–18–1. With these findings of fact and conclusions of law, we agree. However, there remains a fourth method of establishing a public road, that found in SDCL 31–3–22 through –37.

SDCL 31–3–22 through –37 is a procedure for establishing a public highway which was in effect prior to Statehood. It was part of the Dakota Territorial Code of 1877 and subsequent amendments thereto, when the Custer County Commissioners were requested to recognize a public road in 1886.

The minutes of the January 5, 1886 County Commissioner's Court state:

Laid before the board petition for new road on Battle River to begin at mouth of said river into the Cheyenne end at county line up Boker's Poiinon. As the requirements of the law having been complied with, the following viewers were appointed to report at next regular session of Board, April 5, 86, Sam. Day, Alex. Smith, Wm. Spangler.

---

1. It is undisputed that this road whether public or private, has never been on an "approved county highway system."

2. County concedes and the trial court so found that this road is located in an unorganized township. Therefore we do not concern ourselves with any obligations for road repair or maintenance imposed on organized townships.

This was in accordance with §§ 54–57, ch. 112 of the 1883 Session Laws, now SDCL 31–3–22, –24, –27 and –29. Subsequently, pursuant to § 58, ch. 112 of the 1883 Session Laws, now SDCL 31–3–32, the Commissioners ordered the "road to be surveyed and *opened as Co. road* as follows, as far as practicable (see road book)." (emphasis added). Unfortunately County can no longer locate the referenced "road book." However, no statute concerning the establishment of public roads required entry into a "road book." What was required was the approval by action of the County Commissioners which was clearly done.

While the "road book" would be of assistance in establishing the exact location of the road in 1886, the road in dispute appears to be in virtually the same location as the road found on the initial plat of Custer County filed on November 13, 1880. Harold Hasselstrom, who was born in 1903, viewed this plat and stated it showed the same road he and others used into the 1930's for ranching and hauling mail. The road is also clearly shown on an 1898 map of mineral deposits later republished by the Custer County Historical Society in 1977. Moreover, the road is found on an 1898–99 map prepared by the United States Department of the Interior Geological Survey. Justin Matters has sworn that the map shows the same road which is the subject of this lawsuit.

No other similar roads are shown in this area on these documents. The evidence presented by the plaintiffs is not only sufficient to meet their burden of proof,[3] it is uncontradicted. County's only defense seems to be that the Matters were unable to produce the "road book" referred to in the 1886 Commissioner actions. This is a curious defense in light of the fact that County had sole possession of it before it was lost.

South Dakota has long recognized the "adverse inference rule." It states that if a party has documentary evidence under its control, failure to introduce that documentary evidence at trial justifies the inference that the records of such a party will not support that party's claim. *Holman v. Commercial & Savings Bank*, 50 S.D. 524, 528, 210 N.W. 730, 731 (1926). See also *Ritz v. Selma United Methodist Church*, 467 N.W.2d 266, 271 (Iowa 1991); *Johnson v. Austin*, 406 Mich. 420, 280 N.W.2d 9, 14 (1979); 2 McCormick on Evidence § 264 (4th ed. 1992). Here County had exclusive control of the book since 1886 and apparently lost it or discarded it. Applying the "adverse interest rule" against County may not be wholly appropriate when there is no evidence that it was within County's power to recover and produce the lost book,[4] but certainly no inference should be invoked against Matters.

While the 1886 proceedings of the Custer County Commissioners are dated, they become important as under SDCL 31–3–1, once a public road is established, it remains a public road until "vacated in some manner provided by law." In *Thormodsgard v. Wayne Township Bd. of Supervisors*, 310 N.W.2d 157, 159 (S.D.1981) we stated:

> This Court has held that vacation or abandonment of a legally established public way can only occur by some lawful method. Abandonment of a section line right-of-way cannot be established solely by evidence that the highway was never been open, improved, or traveled. The appropriate governing board must act affirmatively to vacate or abandon a section line right-of-way. (citations omitted).

SDCL 31–3–1 has been in effect since 1877. Its importance arises as County is unable to show any proceedings, subsequent to 1886, where it vacated this road although

---

**3.** Besides being required to show under SDCL 21–29–1 that the applicant is being denied a legal right by voluntary unlawful action or inaction of the Board of County Commissioners who have the legal duty to correct the problem, the applicant for the writ of mandamus must further show under SDCL 21–29–2 that he or she has no "plain, speedy and adequate remedy in the ordinary course of law." *See Sioux Falls Argus Lead-*

*er v. Young*, 455 N.W.2d 864, 867 (S.D.1990); *Lohman v. City of Aberdeen*, 246 N.W.2d 781, 784 (S.D.1976).

**4.** The court file indicates that during these proceedings County officials made a good faith effort to locate the missing book. Their efforts were unsuccessful.

it apparently did not assume any responsibility for its maintenance.

We hold the evidence that this road was accepted as a public road in 1886 and has never been legally vacated is uncontradicted. Therefore, the trial court's finding that "the roadway in question had not been designated pursuant to the procedure found at Chapter 31–3, as a county highway," is both factually and legally erroneous. This matter is reversed and remanded to the trial court with direction to enter the writ of mandamus.

MILLER, C.J., and SABERS, AMUNDSON and KONENKAMP, JJ., concur.